UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| TOM PERRY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | 3:15-cv-00072-RLY-WGH |
| ) | |
| TOYOTA MOTOR ENGINEERING & ) | |
| MANUFACTURING HEALTH AND ) | |
| WELFARE BENEFIT PLAN, ) | |
| ) | |
| Defendant. ) | |

**ENTRY ON (1) DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT; (2) PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT; and (3) PLAINTIFF'S REQUEST FOR ORAL ARGUMENT**

Pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq*. ("ERISA"), Plaintiff, Tom Perry, brings a claim for medical expenses and health insurance premiums incurred from July 21, 2009 to November 20, 2014 against Defendant, Toyota Motor Engineering & Manufacturing Health and Welfare Benefit Plan. On June 22, 2015, the Plan filed a Motion to Dismiss Plaintiff's Complaint or, in the Alternative, Motion for Summary Judgment. Because the Plaintiff relies on evidence outside of the pleadings, the court will treat this as one for summary judgment. Fed. R. Civ. P. 12(d). In addition, after Defendant's Motion was fully briefed, Plaintiff filed a Motion for Partial Summary Judgment and a Request for Oral Argument. For the reasons detailed below, the court **GRANTS** the Defendant's Motion for Summary Judgment,

1

**DENIES** the Plaintiff's Motion for Partial Summary Judgment, and **DENIES as MOOT** Plaintiff's Request for Oral Argument.

## I.      Undisputed Facts

Plaintiff worked for Toyota Manufacturing Indiana, Inc. ("TMI") from November 1998 to August 2007.  During his employment with TMI, Plaintiff became a Participant in the Toyota Motor Manufacturing Health and Welfare Benefit Plan ("1997 Plan"), with an effective date of January 1, 1997.  (Filing No. 6, Initial Plan, at 1).  The 1997 Plan was a welfare benefit plan, the purpose of which was to provide, *inter alia*, medical and disability benefits.  (*Id.*).

During his employment with TMI, Plaintiff and his dependents received Medical Benefit coverage under the 1997 Plan.  In 2006, Plaintiff suffered a serious health condition and was forced to stop working.  Soon thereafter, Plaintiff applied and received long-term disability ("LTD") benefits under the 1997 Plan.  Following his termination from TMI in August 2007, Plaintiff and his dependents continued to receive Medical Benefit coverage under Section 4.5(i) of the Plan.  That Section reads, in relevant part:

> A Participant who has been employed by the Company for at least six continuous months and who is receiving payments under the Long-Term Disability Insurance Benefit at the time of termination of employment shall continue to receive Medical Benefit coverage after termination of employment under the same terms as an Employee until such time as the Participant is no longer receiving payments under the Long-Term Disability Insurance Benefit.

(*Id.* at 11).

Although Plaintiff's condition did not improve, the Life Insurance Company of North America ("LINA"), the third-party administrator of the LTD Plan, terminated

Plaintiff's LTD Benefits effective July 21, 2009.  After Plaintiff's LTD Benefits were terminated, the Plan Administrator, the Toyota Employee Benefits Plan Committee ("Benefits Committee"), terminated Plaintiff's Medical Benefit coverage.  Plaintiff then acquired COBRA medical coverage from approximately July 21, 2009 to December 31, 2010, and incurred COBRA premium expenses in connection therewith.  After Plaintiff's COBRA coverage ended, Plaintiff incurred premiums and substantial out-of-pocket medical expenses for himself and his dependents.

On January 12, 2012, the Plan was amended ("2012 Plan").  (Filing No. 13-1, 2012 Plan).  Article 2, Section 2.15 defines the "Effective Date" of the 2012 Plan as "January 1, 1997, except as otherwise specifically provided herein."  (*Id*. at 4).  Article 1, Section 2, entitled Applicability of Plan, provides:

> The provisions of the Plan shall apply only to persons employed by the Company on or after the Effective Date.  The provisions of any prior plan maintained by a Company shall apply to Participants who were employed by the Company prior to the Effective date hereof. Except as otherwise specifically provided herein, the rights, benefits and obligations of persons whose participation in the Plan terminated prior to January 1, 2012 shall be determined under the terms and conditions of the Plan as it existed before the amendment and restatement.

(*Id*. at 2).

On November 20, 2014, LINA reinstated Plaintiff's LTD Benefits and paid him back benefits for the period of July 21, 2009 through November 20, 2014.  (*See* Filing No. 17-3, CIGNA letter).  In December 2014, Plaintiff requested that the Plan reinstate him and his dependents' Medical Benefit coverage and refund him for the COBRA premiums for the period of July 21, 2009 to December 31, 2010, and other premiums and

3

out-of-pocket medical expenses he incurred for the period of August 21, 2009 to November 20, 2014. The Benefits Committee denied Plaintiff's request for refunds.

Plaintiff timely appealed the Benefits Committee's denial on January 10, 2015. On February 18, 2015, the Benefits Committee denied Plaintiff's appeal pursuant to Section 3.3(c) of the 2012 Plan because it constituted a "retroactive" benefit. (Filing No. 13-2, Denial Letter). That Provision amended a Participant's Medical Benefit coverage to exclude Medical Benefit coverage for "any such month(s) for which Long Term-Disability Benefits are awarded retroactively." (2012 Plan at 9). This appeal followed.

## II.     Standard of Review

Both the 1997 and 2012 Plans give the Benefits Committee discretionary authority to determine eligibility for Medical Benefits and to construe the Plan's terms. (1997 Plan at 27-28; 2012 Plan at 43-44). Thus, under both Supreme Court and Seventh Circuit precedent, the Committee's decision is entitled to deference and must be upheld absent evidence its decision was arbitrary and capricious. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Perlman v. Swiss Bank Corp. Comprehensive Disability Prot. Plan*, 195 F.3d 975, 981-82 (7th Cir. 1999).

## III.    Discussion

In opposition to Defendant's motion, Plaintiff raises two arguments. First, Plaintiff argues the "Effective Date" of the 2012 Plan is ambiguous. Second, Plaintiff argues the 2012 Plan may not retroactively amend its plan so as to deny Plaintiff benefits to which he is otherwise entitled. This second argument is the basis of Plaintiff's later filed motion for partial summary judgment.

4

### A. The Effective Date of the 2012 Plan

The cover page of the 2012 Plan reads: "Toyota Motor Engineering & Manufacturing Health and Welfare Benefit Plan, Amended & Restated Effective January 1, 2012." Section 2.15 of the 2012 Plan defines "Effective Date" as "January 1, 1997, except as otherwise specifically provided herein." Plaintiff argues these two provisions create an ambiguity requiring the court to construe the 2012 Plan's effective date as January 1, 2012. Thus, because Plaintiff was "employed by the Company prior to the Effective Date" pursuant to Article 1, Section 2 of the 2012 Plan (*see* p. 3), the provisions of the initial 1997 Plan control.

The definition of "Effective Date" in both the 1997 Plan and the 2012 Plan are identical. Both Plans unambiguously define the "Effective Date" as "January 1, 1997, except as otherwise specifically provided herein." (*Compare* 1997 Plan, Section 2.10, *with* 2012 Plan, Section 21.5 at 3). The date on the cover page uses the term "effective" to describe the date of the amendment and restatement. The term "effective" is also used in the preamble to the 2012 Plan:

> WHEREAS, Toyota Motor Engineering & Manufacturing North America, Inc. (the "Sponsoring Company"), . . . , desires to amend and restate the [Plan] effective January 1, 2012 to incorporate eleven amendments to the Plan since its original effective date, certain provisions of the Patient Protection and Affordable Care Act and the Health Care and Education Reconciliation Act, and other clerical and technical changes; . . . .
>
> NOW, THEREFORE, the Sponsoring Company hereby approves and adopts the [Plan], as amended and restated January 1, 2012, which shall read as follows:

5

Based on these provisions, the court finds the term "effective January 1, 2012" as used in this context serves to notify Participants the Plan was amended and restated on January 1, 2012 by approval of the Sponsoring Company. If the term "effective" was meant to mean "Effective Date" as defined in the Plan, the cover page and preamble would have read "Effective Date January 1, 2012" and not "effective January 1, 2012." In short, there is no ambiguity here. The "Effective Date" of both plans is January 1, 1997.

### B.     Medical Benefits Coverage

"Employers and other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans." *See Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995). However "courts have generally rejected attempts by welfare benefit plan sponsors or insurers to apply changes *retroactively* so as to deny benefits that had already vested." *Medina v. Time Ins. Co.*, 3 F. Supp. 2d 996, 1000 (S.D. Ind. 1998) (emphasis in original). "[U]nder ERISA and general principles of insurance contract law, benefits vest (and cannot be taken away by retroactive plan amendment) when performance becomes due under the contract." *Id.* at 1000-01 (citing *Member Servs. Life Ins. Co. v. Am. Nat'l Bank & Trust Co. of Sapulpa*, 130 F.3d 950, 956-57 (10th Cir. 1997)).

Plaintiff's claim to Medical Benefit coverage for the period July 21, 2009 to November 20, 2014, is premised on LINA's lump-sum payment of LTD Benefits on November 20, 2014, to cover the unpaid LTD Benefits for that period of time. He claims that by virtue of that lump-sum payment, his Medical Benefit coverage was automatically reinstated for the period July 21, 2009 to November 20, 2014. In that respect, he argues,

performance "had become due" under the 1997 Plan (for the period July 19, 2009 to December 31, 2011) and under the 2012 Plan (from January 1, 2012 to November 20, 2014). The court finds no support for this claim in either the 1997 or the 2012 Plan.

### 1. The 1997 Plan

The relevant provision of the 1997 Plan is found in Section 3.3, which states, in relevant part:

> 3.3 <u>Termination of Participation</u>. A Participant shall discontinue participation in the Plan upon the earlier of the date: . . . (b) the Participant terminates his/her employment with the Company. . . . Notwithstanding (b) above, a Participant who has been employed by the Company for at least six continuous months and who is receiving payments under the Long-Term Disability Insurance Benefit at the time of termination of employment shall continue to participate in the Plan for the purpose of receiving the Medical Benefit and the Long-Term Disability Insurance Benefit only, until such time as the Participant is no longer receiving payments under the Long-Term Disability Insurance Benefit, in which case participation shall cease.

This Section unambiguously provides that a Participant "who is receiving payments" under the LTD Benefit qualifies as a Participant for purposes of receiving the Medical Benefit. When a Participant's LTD Benefit ends, his participation in the 1997 Plan ends and thus, his Medical Benefit ends. There is no provision indicating the Medical Benefit will continue during the period following the cessation of LTD Benefit payments, nor a provision stating that the Plan will be obligated for Medical Benefit following cessation of LTD Benefit payments if the Participant receives a subsequent lump-sum payment for LTD Benefits. Accordingly, there is no language in the 1997 Plan to support an ERISA claim or an insurance contract claim.

Relatedly, Plaintiff's claim that his Medical Benefit vested via LINA's retroactive payment of his LTD Benefits is likewise without merit. Because Plaintiff had been terminated from his employment, his Medical Benefits coverage was dependent on his LTD Benefit. Once he was "no longer receiving payments" pursuant to his LTD Benefit, his participation in the Plan ceased; meaning, his Medical Benefits coverage ceased. There is no dispute that LTD Benefits ceased on July 21, 2009, and were not made during the period July 21, 2009 to December 31, 2011. Thus, by the very terms of the 1997 Plan, there was no "vesting" of Medical Benefit coverage during that period.

### 2. The 2012 Plan

The Section of the 2012 Plan at issue states, in relevant part:

3.3 **Termination of Participation**.

(a) A Participant shall discontinue participation in the Plan upon the earlier of the date:

    (ii) the Participant terminates his/her employment with the Company.

. . . .

(c) Notwithstanding Sections 3.3(a)(ii) and 3.3(a)(v) above, a Participant who has been employed by the Company for at least six continuous months and is receiving Long-Term Disability Insurance Benefit payments as of the Participant's termination of employment with the Company shall remain eligible to participate in the Plan, after termination of employment, for the limited purpose(s) of receiving:

    (i) Any Long-Term Disability Insurance Benefit payments authorized by the Insurer, provided that the Participant's disability occurred while the Participant was employed by the Company; and

    (ii) Medical Benefit Coverage as provided in Sections 3.3(c)(ii)(A) and 3.3(c)(ii)(B).

>    A.   <u>Before January 1, 2012</u>.  Medical Benefit coverage (including any Medical Benefit coverage provided to the Participant's Dependents as a result of the Participant's employment with the Company), if such Participant became eligible for and began receiving Long Term-Disability Insurance Benefits prior to January 1, 2012, (1) for any month in which the Participant actually received a Long-Term Disability Insurance Benefits payment (*excluding any such month(s) for which Long Term-Disability Insurance Benefits are awarded retroactively*), . . . .

Like Section 3.3 of the 1997 Plan, this Section of the 2012 Plan unambiguously provides that, if a terminated Participant became eligible for LTD Benefits and began receiving LTD Benefits prior to January 1, 2012, he received the Medical Benefit coverage contemporaneously therewith.  The 2012 Plan differs from the 1997 Plan in one important respect – the Participant is not entitled to Medical Benefit coverage for the months for which LTD Benefits are awarded *retroactively*.

It is undisputed that Plaintiff was not eligible for Medical Benefit coverage at the time the 2012 Plan was published.  It is also undisputed that he was awarded LTD Benefits retroactively.  Thus, under the plain language of the 2012 Plan, Plaintiff is not entitled to the Medical Benefit for the period January 1, 2012 to November 20, 2014.  And for the same reasons as set forth above, Plaintiff's Medical Benefit did not vest during that time period.  The Benefits Committee's construction of the Plan at issue may not seem fair, but it is not arbitrary and capricious.  Accordingly, the court must uphold the decision of the Plan.

## IV.     Conclusion

For the reasons herein set forth, the court finds Plaintiff is not entitled to reimbursement for COBRA premiums for the period July 21, 2009 to December 31, 2010, and other premiums and out-of-pocket expenses for the period August 21, 2009, to November 20, 2014.  Accordingly, the court **GRANTS** the Defendant's Motion for Summary Judgment (Filing No. 12) and **DENIES** the Plaintiff's Motion for Partial Summary Judgment (Filing No. 28).  In light of the court's rulings, the court **DENIES as MOOT** Plaintiff's Request for Oral Argument (Filing No. 31).

**SO ORDERED** this 23rd day of November 2015.

_____
RICHARD L. YOUNG,  CHIEF JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.